[Cite as *HSBC Bank USA v. Pryor*, 2026-Ohio-3080.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| HSBC Bank USA, National Association As Trustee for Nomura Home Equity Loan Trust, Series 2006-WF1 Asset Backed Pass-Through Certificates, | : : : : : | Case No. 25CA50 |
| | : | |
| Plaintiff-Appellee, | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| v. | : | |
| | : | |
| Unknown Heirs at Law, Devisees, Legatees, Administrators, and Executors: Of the Estate of Nyowka L. Pryor, et al. | : : | **RELEASED 8/04/2026** |
| | : | |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Anthony Pryor, Caldwell, Ohio, pro se appellant.[1]

Laura C. Infante and Ashley E. Mueller, Akron, Ohio, for appellee.
_____

Hess, J.

{¶1} Anthony Pryor ("Pryor") appeals from a judgment of the Washington County Court of Common Pleas in a foreclosure action. He presents five assignments of error asserting the trial court erred as a matter of law and denied his right to due process (1) by granting summary judgment for failure to demonstrate that a genuine issue of material fact existed; (2) by failing to recognize *CitiMortgage, Inc. v. Brown*, 2015-Ohio-5347 (1st Dist.) ("*Brown*"), "when that law specifically shows that [he] should have maintained the

_____

[1] None of the other defendants below have entered an appearance or otherwise participated in this appeal.

property in question and that the promissory note in question is invalid"; (3) due to him "being denied the right to make payments on said loan that existed on property rightfully in his name and forcing a default"; (4) ordering that the plaintiff and other creditors "be paid first," instead of him "being paid his share of the 50% property rights first"; and (5) conducting a reformation of the property description without his consent. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. Pleadings

{¶2} In January 2025, HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan Trust, Series 2006-WF1 Asset Backed Pass-Through Certificates c/o Shellpoint Mortgage Servicing ("HSBC"), filed a complaint in foreclosure with reformation, which it later amended. HSBC named as defendants: (1) the unknown heirs at law, devisees, legatees, administrators, and executors of the estate of Nyowka L. Pryor ("Nyowka"); (2) the unknown spouse, if any, of Nyowka; (3) Pryor; (4) the unknown spouse, if any, of Pryor; (5) Medicaid Estate Recovery, State of Ohio, Department of Job and Family Services ("Medicaid Estate Recovery"); (6) Community Action Corporation of Washington-Morgan Counties; (7) Treasurer of Washington County ("Treasurer"); (8) Paulinea Faddis; and (9) the unknown spouse, if any, of Paulinea Faddis.

{¶3} The amended complaint alleged the following. HSBC is entitled to enforce a promissory note on which remained due $67,024.64 plus interest, HSBC was the holder of a mortgage given to secure the indebtedness evidenced by the note, and the mortgage was a valid and first lien on certain real property. Nyowka agreed to assume the

obligations under the note and mortgage under a loan assumption agreement and entered into a loan modification agreement with HSBC. Nyowka passed away on September 2, 2024, and by reason of a default in payment of the note and mortgage securing the same, HSBC declared the debt to be immediately due and payable, all conditions precedent were satisfied, and HSBC was entitled to foreclosure of the mortgage. And due to a scrivener's error, the legal description of the property was "not entirely and properly placed in the mortgage," so HSBC was entitled to reformation of the mortgage to conform with the parties' intent. The defendants had or claimed to have an interest in the property.

{¶4} In his answer to the amended complaint, Pryor stated, among other things, that he was not allowed to be part of the assumption agreement even though he was "an equal co-owner" of the property. He claimed that he was not notified the payments had not been made since July 2024 and that if he had been part of the assumption agreement, he "could have been making payments this entire time and the mortgage would not have been in default as it may be now." He stated that he "agrees" with the paragraphs in the amended complaint regarding reformation. He also stated that he wanted to submit as an exhibit a letter to HSBC's counsel "whereby the appeals court of the fourth district has upheld the trial court's decision and removed all of Mr. Pryor's rights and responsibilities towards this residence in question including the back taxes, mortgage payments, or any other debt incurred within the time frame of 2021 to present. (See 2025-Ohio-1854) Unless or until Paulinea Faddis may give those rights back to Mr. Pryor or needs his assistance."

## B. Motion Practice

**{¶5}** HSBC filed a motion for default judgment against all defendants except Pryor, Medicaid Recovery Estate, and the Treasurer, and HSBC filed a motion for summary judgment against Pryor. The summary judgment motion asserted the following. George and Beulah Pryor originally executed the note and mortgage. They were deceased, and Nyowka and Pryor each owned 50% of the property. Nyowka assumed the loan but was also now deceased. HSBC was entitled to enforce the note which was endorsed to blank because it is bearer paper, and HSBC has possession of it. HSBC was also the current mortgagee. Nyowka failed to abide by the terms of the note, mortgage, and loan modification agreement, so there was a default. All conditions precedent were met, and the principal balance of $67,024.64 plus interest was due. And while Pryor's answer alleged he was not given notices regarding payments, he was not entitled to them because he did not assume the loan, and there was no privity of contract between him and HSBC. The motion also addressed reformation.

**{¶6}** HSBC supported its motion with the affidavit of Lucas Bennett, an employee of HSBC's servicer. He averred that from at least the time of the filing of the complaint, HSBC has had possession of the note, which was endorsed to blank, and that HSBC was the assignee of the security interest for the subject loan. He averred that the loan account had been and remained in default. He also averred that notice of default was mailed in accordance with the note and mortgage, HSBC had accelerated and called due the entire amount due under the note, and there was presently due on the loan an unpaid principal balance of $67,024.64 plus interest. Bennett authenticated the note, mortgage, mortgage assignment to HSBC, assumption and modification agreements Nyowka signed, the

payment history, the notice of default, and additional documents, which were all attached to and incorporated into his affidavit.

{¶7}   Pryor filed a response to the motion for summary/motion to dismiss. He indicated that after Beulah died intestate, he and Nyowka each obtained a 50% interest in the property. He asserted that during a prior foreclosure case (which was evidently dismissed), HSBC excluded him from the assumption agreement, so it was fraudulent for HSBC to use the fact that he was not a party to the agreement against him.  Pryor also asserted that after Nyowka's death, he became "the only surviving owner of the property," and offered to assume the loan payments, but HSBC refused, and was now trying to "profit by stealing" his interest, which was prohibited by Ohio law, federal law, and principles of estoppel.  Pryor also claimed that this case was similar to *Brown*.  He asserted that in *Brown*, CitiMortgage, Inc. tried to enforce a mortgage against a surviving non-debtor joint tenant, but the court found that the death of the mortgaging joint tenant extinguished the mortgage and that the surviving joint tenant owned the property free of the mortgage.  Pryor claimed he and Nyowka held "what R.C. 5302.19 defines as tenancy in common" and suggested this was the same as the joint tenancy in *Brown* except that he and Nyowka are siblings whereas "a joint tenancy relates to married couples."  Pryor maintained that he was being denied the due process right to protect the property.  He also stated that he objected to reformation.  Pryor indicated an affidavit to support his filing would follow.

{¶8}   HSBC filed a reply in support of the summary judgment motion/brief in opposition to the motion to dismiss.  HSBC claimed Pryor's arguments were "barred by res judicata and for lack of standing" because he sued Nyowka in another case, the trial

court "found that 100% of the property that is the subject of this action was partitioned to Nyowka . . . and that [Pryor's] interest in the property was extinguished," Pryor appealed, and this court affirmed in *Pryor v. Pryor*, 2025-Ohio-1854 (4th Dist.). HSBC maintained that even if the trial court still considered Pryor's arguments "as the deed was never recorded due to the death of Nyowka," the court should still deny the motion to dismiss and grant it summary judgment.

{¶9} Subsequently, Pryor filed an affidavit. Among other things, he averred that he was "the deed holder (owner)" to the property in question, that he "inherited this residence" with his sister, Nyowka, through a probate court case on January 22, 2021, and that his name "has been continuously on that deed since that date." He also averred that all information in his response to the motion for summary judgment/motion to dismiss was "true and accurate to the best of my knowledge and belief, based upon all of the facts I have been given."

{¶10} The trial court denied the motion to dismiss. Then Pryor filed a "response" to HSBC's reply in support of the summary judgment motion/reply in support of the motion to dismiss. He claimed the res judicata and lack of standing arguments lacked merit because HSBC was not a party to the action against Nyowka. He asserted that he had been "named on the deed as a legal owner of this residence and property" since 2001 and therefore had a "right and an obligation to defend what his name is upon." He also claimed "judgments are not self-executing" and that Nyowka failed to have his name removed from the deed before her death. He also asserted that he raised several issues of material fact.

## C.  Judgment

**{¶11}**  In November 2025, the trial court issued an "*In rem* Judgment Entry with Reformation."  The court found that Nyowka and Pryor are the owners of the property.  The court found all defendants except Pryor, Medicaid Estate Recovery, and the Treasurer were "in default of an Answer or other pleading and thereby confessed the allegations of the Complaint to be true," and they were "forever barred from asserting any right, title or interest in and to the premises described herein."  The court found Medicaid Estate Recovery disclaimed any right, title, claim, or interest in the premises.  The court found there was due to the Treasurer "taxes, accrued taxes, assessments and penalties on the premises" which were a "valid and subsisting first lien." The court also granted HSBC's motion for summary judgment, ordered reformation of the mortgage deed, and found the mortgage was a valid first mortgage lien subject only to the Treasurer's lien. The court ordered that unless the sums it found due plus costs were fully paid within three days, HSBC could cause an order of sale to be issued.  The court ordered that upon confirmation of the sale, the sheriff pay from the sale proceeds the following:  (1) first, the clerk of courts for the costs of the action, including appraiser fees; (2) second, the Treasurer, for real estate taxes, assessments, interest and penalties due and payable on the premises; and (3) third, HSBC, the sum of $67,024.64 plus interest and other costs and expenses enumerated in the entry.  The court ordered that the balance, if any, be deposited with the clerk pending further order of the court.

## II.  ASSIGNMENTS OF ERROR

**{¶12}**  Pryor presents five assignments of error:

Assignment of Error Number One:  The Trial Court erred as a matter of law, and denied the Defendant-Appellant's right to Due Process, in violation of

the Fifth and Fourteenth Amendment to the United States Constitution and the Ohio Constitution when it granted Summary Judgment for failure to demonstrate that a genuine issue of material fact existed.

Assignment of Error Number Two:  The Trial Court erred as a matter of law and denied the Defendant-Appellant's right to Due Process, in violation of the Fifth and Fourteenth Amendment to the United States Constitution and the Ohio Constitution for failing to recognize CitiMortgage Inc. v. Brown 2015-Ohio-5347 (1st Dist. 2015) when that law specifically shows that the Defendant-Appellant should have maintained the property in question and that the promissory note in question is invalid.

Assignment of Error Number Three:  The Trial Court erred as a matter of law and denied the Defendant-Appellant's right to Due Process, in violation of the Fifth and Fourteenth Amendment to the United States Constitution and the Ohio Constitution due to Defendant-Appellant being denied the right to make payments on said loan that existed on property rightfully in his name and forcing a default.

Assignment of Error Number Four:  The Trial Court erred as a matter of law and denied the Defendant-Appellant's right to Due Process, in violation of the Fifth and Fourteenth Amendment to the United States Constitution and the Ohio Constitution when it ordered that the Plaintiff-Appellee, as well as other creditors be paid first, instead of the Defendant-Appellant being paid his share of the 50% property rights first.

Assignment of Error Number Five:  The Trial Court erred as a matter of law and denied the Defendant-Appellant's right to Due Process, in violation of the Fifth and Fourteenth Amendment to the United States Constitution and the Ohio Constitution when it conducted a reformation of the property description without the consent of the Defendant-Appellant and thereby giving the Plaintiff-Appellee rights over said property when in fact they do not.

We will address the assignments of error out of order.

### III.  STANDARD OF REVIEW

{¶13} We review a trial court's decision on a motion for summary judgment de novo. *Harter v. Chillicothe Long-Term Care, Inc.*, 2012-Ohio-2464, ¶ 12 (4th Dist.). We afford no deference to the trial court's decision but rather conduct an independent review to determine whether summary judgment is appropriate. *Id.* "A summary judgment is

appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law." *Hawk v. Menasha Packaging*, 2008-Ohio-483, ¶ 6 (4th Dist.).

**{¶14}** "The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law." *DeepRock Disposal Solutions, LLC v. Forté Prods., LLC*, 2021-Ohio-1436, ¶ 68 (4th Dist.). "To meet its burden, the moving party must specifically refer to 'the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,' that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*, quoting Civ.R. 56(C). "Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial." *Id.*

## IV.  PARTITION PROCEEDING

**{¶15}**  Initially, we observe that implicit in the trial court's determination that Pryor and Nyowka are the owners of the property is a rejection of HSBC's contention that Pryor's interest was extinguished by virtue of the earlier partition proceeding.  Pryor does not challenge the implicit rejection of HSBC's argument, which benefits him, and HSBC has not filed a cross-appeal.  Thus, the appropriateness of the trial court's implicit rejection of HSBC's argument is not before us.

## V.  REFORMATION CLAIM

**{¶16}**  In the fifth assignment of error, Pryor contends the trial court erred as a matter of law and denied his right to due process when it conducted a reformation of the property description without his consent, thereby giving HSBC rights over the property it does not have.  However, in its appellee's brief, HSBC asserted, among other things, that Pryor waived this argument because his answer "admits to the count in the complaint for reformation."  And in his reply brief, Pryor states: "The Appellant hereby concedes to this claim because he did in fact blindly stipulate to the reformation within his Answer to the Amended Complaint for foreclosure."  He further states that because he "agreed blindly to the paragraphs . . . of the complaint concerning reformation," he understands if his fifth assignment of error "is dismissed based upon that fact."

**{¶17}**  "'It is elementary in the law of pleading that an admission in a pleading dispenses with proof and is equivalent to proof of the fact.'"  *BAC Home Loans Servicing, L.P. v. Vanjo*, 2015-Ohio-4317, ¶ 24 (11th Dist.), quoting *Rhoden v. Akron,* 61 Ohio App.3d 725, 727 (9th Dist.1988).  "'Thus, an admission made in the pleadings dispenses with the need to prove the truth of the matter admitted.'"  *Id.,* quoting *Rhoden* at 727.  Because Pryor admitted in his answer to the amended complaint that HSBC was entitled to the requested reformation, the trial court did not err as a matter of law and deny his right to due process by conducting a reformation of the property description without his consent.  Accordingly, we overrule the fifth assignment of error.

## VI.  FORECLOSURE CLAIM

### 1.  Positions of the Parties

{¶18}  The remaining assignments of error pertain to the foreclosure claim.  In the first and second assignments of error, Pryor contends the trial court erred as a matter of law and denied his right to due process by granting summary judgment "for failure to demonstrate that a genuine issue of material fact existed" and failing to recognize *Brown* "when that law specifically shows that [he] should have maintained the property in question and that the promissory note in question is invalid." He claims HSBC did not meet its initial burden to show it "possessed a valid lien or promissory note." Pryor suggests that he and Nyowka owned the property as joint tenants with survivorship rights because the deed states that he and Nyowka each own a 50% undivided interest in the property.  He suggests that because Nyowka signed the loan assumption agreement but he did not, and because HSBC did not have the estate transformed to a tenancy in common pursuant to R.C. 5302.20(C)(4) prior to Nyowka's death, upon her death, the mortgage was extinguished, and he became the sole title holder.  He also asserts that Nyowka's death and HSBC's refusal of his offer to make payments prohibits HSBC "from collecting the alleged debt."  He asserts that "the debt is extinguished upon the death of the debtor."  He also asserts that by refusing his offer, HSBC "tacitly agreed to forgive the debt," and it is "paid in full as explained in" *Brown*.  He also claims "principles of justice and equity" preclude HSBC from "creating the very situation it complains of" to "profit" at his expense.  He claims estoppel and fraud exist due to HSBC's continuous refusal to let him be part of the loan and assume the debt.

**{¶19}** In the third assignment of error, Pryor contends that even if HSBC has a valid lien, the trial court erred as a matter of law and denied his right to due process due to him "being denied the right to make payments on said loan," "forcing a default." Pryor maintains that he had a right to assume the loan because his name is on the deed, and he is the surviving joint tenant. He asserts that Ohio Const., art. I, § 1 grants him "the right to maintain possession of the property that is rightfully his as long as he is willing to make reparations on said property." Pryor claims he offered "to make the necessary payments" to HSBC, but HSBC refused to respond to his request. Therefore, the trial court's judgment "must be overturned to show that [he] maintains ownership of said property free and clear from any liens or promissory note held by [HSBC]."

**{¶20}** In the fourth assignment of error, Pryor contends that even if HSBC has a valid note and lien, the trial court erred as a matter of law and denied his right to due process by ordering that HSBC and other creditors be paid first instead of him "being paid his share of the 50% property rights first." He maintains that HSBC only has a right to 50% of the property. Therefore, he must be paid 50% of the sale proceeds before HSBC or any other creditor is compensated.

**{¶21}** HSBC maintains that Pryor's arguments are waived or barred for various reasons, but even if they are not, they are meritless.

### 2. *Brown*

**{¶22}** In *Brown*, Vernon and Theresa Brown bought a home, and the purchase contract conveyed the property to them in a joint tenancy with the right of survivorship. *Brown*, 2015-Ohio-5347, at ¶ 2 (1st Dist.). However, Theresa was the sole borrower on the note, the mortgage identified her as the mortgager, and only she signed the signature

line of the mortgage. *Id.* Her typewritten name on the mortgage was followed by a handwritten notation stating "'married to Vernon Brown who signs with the sole intent of releasing dower,'" and Vernon's signature appeared only at the bottom of the mortgage. *Id.* CitiMortgage assumed the mortgage and entered into a loan modification with Theresa. *Id.* at ¶ 3. Theresa and Vernon both signed the new note, but the note identified only Theresa as the borrower. *Id.* Later, CitiMortgage filed a foreclosure action and sought reformation of the mortgage, claiming the mortgage deed was mistakenly executed to release dower only. *Id.* at ¶ 4. Theresa died while the action was pending, and the trial court found that her death extinguished the mortgage and that Vernon owned the property free of the mortgage. *Id.* at ¶ 5-6.

{¶23} In affirming, the appellate court explained that in a survivorship tenancy, "both tenants hold an 'equal share of the title during their joint lives.'" *Id.* at ¶ 8, quoting R.C. 5302.20(B). "Upon the death of one of two joint tenants, the other tenant becomes fully vested with title to the property as the sole title holder." *Id.*, citing R.C. 5302.20(B). The court further explained that "under Ohio's statutory scheme, a conveyance by less than all of the joint tenants does not sever the joint tenancy." *Id.* at ¶ 9. Instead:

> "a conveyance from any survivorship tenant, or from any number of survivorship tenants that is less than all of them, to a person who is not a survivorship tenant vests the title of the grantor or grantors in the grantee, conditioned upon the survivorship of the grantor or grantors of the conveyance and does not alter the interest or the title of any of the other survivorship tenants who do not join in the conveyance."

*Id.*, quoting R.C. 5302.20(C)(2). "Thus, Theresa's conveyance of the mortgage did not sever the survivorship tenancy," and "the only interest that CitiMortgage held was one that was 'conditioned' upon her survival." *Id.* And "[b]ecause the conveyance was

conditional upon Theresa's survival, CitiMortgage's mortgage interest was terminated upon her death," and "Vernon took the property free of the mortgage." *Id.*

**{¶24}** The appellate court observed that Ohio has "a statutory vehicle to protect creditors of one joint tenant"—R.C. 5302.20(C)(4)—and that the statute provides:

> "A creditor of a survivorship tenant may enforce a lien against the interest of one or more survivorship tenants by an action to marshall liens against the interest of the debtor or debtors. Every person with an interest in or lien against the interest of the debtor or debtors shall be made a party to the action. Upon a determination by the court that a party or cross-claimant has a valid lien against the interest of a survivorship tenant, the title to the real property ceases to be a survivorship tenancy and becomes a tenancy in common."

*Id.* at ¶ 21, quoting R.C. 5302.20(C)(4). But Theresa died before such a determination was made, so "the estate remained a joint tenancy at Theresa's death and Vernon took the property free of the mortgage." *Id.* at ¶ 22.

### 3. Analysis

**{¶25}** Even if Pryor's arguments are not waived or barred, they lack merit. "'"To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due."'" *Beneficial Fin. I Inc. v. Saunders*, 2019-Ohio-3577, ¶ 15 (4th Dist.), quoting *HSBC Mtge. Servs., Inc. v. Watson,* 2015-Ohio-221, ¶ 24 (3d Dist.), quoting *Wright-Patt Credit Union, Inc. v. Byington*, 2013-Ohio-3963, ¶ 10 (6th Dist.).

**{¶26}** HSBC satisfied its initial summary judgment burden. Bennett authenticated the note, mortgage, the mortgage assignment to HSBC, the assumption and modification

agreements, the payment history, the notice of default, and additional documents which were all attached to and incorporated into his affidavit. He averred that from at least the time of the filing of the complaint, HSBC has had possession of the note, which was endorsed to blank, and that HSBC was the assignee of the security interest for the subject loan. He averred that the loan account had been and remained in default, that notice of default was mailed in accordance with the note and mortgage, that HSBC had accelerated and called due the entire amount due under the note, and that there was presently due on the loan an unpaid principal balance of $67,024.64 plus interest.

{¶27} Therefore, the burden shifted to Pryor to set forth specific facts to show that there is a genuine issue for trial, but he failed in this burden. Pryor's suggestion that pursuant to *Brown*, upon Nyowka's death, the mortgage was extinguished and he became the sole title holder in accordance with a survivorship tenancy is not well-taken. *Brown* and other cases Pryor cites in which only one of two joint tenants with survivorship rights is the debtor are inapposite because the note and mortgage in this case were not originally executed by only one of two joint tenants with survivorship rights. George and Beulah previously owned the property, and even if they had a survivorship tenancy,[2] they both signed the note and mortgage as borrowers. Thus, the mortgage encumbered their entire interest in the property and was not conditioned on either of their survival.

{¶28} When Nyowka and Pryor inherited the property, they did not do so as joint tenants with survivorship rights. "The common-law joint tenancy with incidental right of survivorship is not recognized in Ohio." *Estate of Gaskill*, 2019-Ohio-4936, ¶ 18 (3d Dist.), citing *In re Hutchinson's Estate*, 120 Ohio St. 542, 550 (1929). R.C. 5302.20(A) does

---

[2] The mortgage indicates George and Beulah owned the property as tenants by the entirety. [R. 42, Ex. C]

state that "if any interest in real property is conveyed or devised to two or more persons for their joint lives and then to the survivor or survivors of them, those persons hold title as survivorship tenants, and the joint interest created is a survivorship tenancy." And R.C. 5302.20(B) provides that once "only one survivorship tenant remains alive, . . . the survivor is fully vested with title to the real property as the sole title holder." But the property at issue was not conveyed or devised to Pryor and Nyowka for their joint lives and then to the survivor of them. Beulah died intestate, and R.C. 2105.06 states:

> When a person dies intestate having title or right . . . to any real property . . . , in this state, . . . the real property . . . shall descend and pass in parcenary, except as otherwise provided by law, in the following course:
>
> (A) If there is no surviving spouse, to the children of the intestate or their lineal descendants, per stirpes;
>
> . . . .

 "'It is said that there is now no distinction between an estate in parcenary, and an estate as tenants in common.'" *Hoosier v. Heirs, Devisees or Assignees of Abraham Hoosier*, 2014-Ohio-5810, ¶ 25 (4th Dist.), quoting *Winters Natl. Bank & Trust Co. v. Riffe,* 93 Ohio Law Abs. 171 (C.P. 1963), *rev'd on other grounds,* 2 Ohio St.2d 72 (1965). Contrary to what Pryor suggested in his response to the motion for summary judgment/motion to dismiss when he argued that he and Nyowka had a tenancy in common, a tenancy in common does not include a right of survivorship. *See Estate of Coppick*, 2023-Ohio-2279, ¶ 27 (4th Dist.), quoting *Black's Law Dictionary* (11th Ed. 2019). Thus, the property passed to Pryor and Nyowka in parcenary, without survivorship rights.

{¶29} The certificate of transfer from the probate court, which is evidently what Pryor refers to as a deed and attached to his appellate brief, does not compel a different result. The certificate is not part of the record on appeal, and "[a] reviewing court cannot

add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.[3]  And even if we could consider the certificate, it indicates only that Beulah died intestate, that she died owning the property, that it "passed by devise, descent or election" to Pryor and Nyowka, and that they both have an "undivided 50%" interest in the property.  The certificate does not indicate that the property passed to them for their joint lives and then to the survivor of them, nor would it have been appropriate for it to have done so under R.C. 2105.26.

**{¶30}**  When the property passed to Pryor and Nyowka, the interests they received remained subject to the mortgage. Even though George and Beulah were deceased, "[t]he death of the original debtor does not extinguish a mortgage lien on real property." *James B. Nutter & Co. v. Estate of Neifer*, 2016-Ohio-7641, ¶ 9 (3d Dist.). And the mortgage specifically states:  "Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing."

**{¶31}**  The fact that only Nyowka signed the assumption agreement, that she died, and that HSBC refused to let Pryor assume the loan did not operate to extinguish the debt evidenced by the note or the mortgage lien as to her or Pryor's interest in the property. The assumption agreement specifically states: "Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note or Mortgage nor a release of the original Borrower from any and all personal liability with respect to the payment of the Note and any other obligations contained in the Note, as

---

[3] For this same reason, we also cannot consider a purported letter from a judge which Pryor attached to his appellate brief.

amended herein, or the Mortgage securing same." Nothing in the note, mortgage, assumption agreement, or modification agreement indicates the debt and mortgage lien were extinguished upon Nyowka's death. The mortgage specifically states: "Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing." And the mortgage indicates an assumption of the obligations under it by a successor in interest of a borrower is subject to lender approval, stating, "Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument."

**{¶32}** The suggestion that Pryor had a constitutional right to assume the loan lacks merit. He directs us to Ohio Const., art. 1, § 1 which states: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety." Nothing in this provision gives Pryor the right to assume the loan and make payments on it. The language in Ohio Const., art. 1, § 1 "is not an independent source of self-executing protections. Rather, it is a statement of fundamental ideals upon which a limited government is created. . . . [I]t requires other provisions of the Ohio Constitution or legislative definition to give it practical effect. This is so because its language lacks the completeness required to offer meaningful guidance for judicial enforcement." *State v. Williams*, 88 Ohio St.3d 513, 523 (2000). Pryor also directs us to the due process clauses of the United States Constitution and Ohio Constitution but does not explain why they would require that the trial court force

HSBC to contract with him and allow him to assume the loan and make payments on it. "Ohio law requires mutual assent for a valid and enforceable contract, . . . and mutual assent is demonstrated when both parties agree to the essential terms of the contract." *Handy v. Patriot Mgt. & Invests. Co.*, 2026-Ohio-1627, ¶ 57 (4th Dist.).

**{¶33}** Moreover, the trial court did not err by ordering that HSBC and other creditors be paid from the sale proceeds before Pryor.  The underlying premise of Pryor's argument is that HSBC at most has a lien on Nyowka's interest in the property.  Pryor does not articulate why, even if true, this would impact the order in which creditors aside from HSBC are paid. But in any event, the underlying premise of his argument is incorrect because as explained above, HSBC had a valid lien against the entire property, including Pryor's interest.   Therefore, foreclosure cases he cites regarding the payment of sale proceeds when a lien is only on a fractional interest in the property are inapposite.

**{¶34}**  For the foregoing reasons, the trial court did not err and violate Pryor's right to due process: (1) by granting summary judgment for failure to demonstrate that a genuine issue of material fact existed; (2) by failing to recognize *Brown*; (3) due to him "being denied the right to make payments on said loan that existed on property rightfully in his name and forcing a default"; or (4) ordering that HSBC and other creditors "be paid first," instead of him "being paid his share of the 50% property rights first."  Accordingly, we overrule the first, second, third, and fourth assignments of error.

VII.  CONCLUSION

**{¶35}**  Having overruled each of the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**